Porter, J.
delivered the opinion of the court. The petitioner claims $729 92/100, due him by one Samuel M'Intire, deceased, of whose estate the defendant is curator; and he avers that $550 of this sum was secured to him by mortgage.
The defendant pleaded the general issue; insanity in M'Intire; and that, at the time he executed the act of mortgage, a petition for his interdiction, provoked by the plaintiff in this suit, was pending before the parish court.
The pendency of an action, to establish the fact of insanity, although not acted an by the judge before the death of M'Intire, authorized the introduction of testimony to prove that, at the time he executed the instrument, he was notoriously insane, Civil Code. 80, art. 16. The only question, therefore, which the cause *256 presents, that offers the least difficulty, is one of fact—whether the testimony produced supports the plea of insanity?
West'n District.
August, 1822.
The evidence which comes up with the record is in substance as follows:—
Bell swore, that at the time M'Intire executed the act, he was committing a great many extravagant acts which indicated that he was of an unsound state of mind; that the petition for interdiction was made out at the time deceased returned from the sea shore; that he never was sufficiently recovered, from that period until the time of his death, to be able to go abroad as usual; he appeared always deranged; sometimes so much so,as to leave his room and go naked to the house of plaintiff; at other times, he would talk as reasonably as he ever did; there were times when a stranger would have thought him in his right mind, but one whose suspicions were awakened would have thought otherwise; deceased always kept a quantity of liquors in his room.
Kirkby stated, that after M'Intire's return from the borders of the sea, he proposed to witness to purchase a house and that they agreed on the price, &c.; but observing a wildness in his looks, and that he talked about *257 a block, or some trifling object, in comparison with that which formed the object of their bargain, witness was induced to believe his mind deranged, and on that account declined the contract. A day or two after, the deceased ran out into the street naked, apparently insensible of what he was doing; could not say, if the deceased’s conduct arose from drinking or other causes.
King testified, that he saw the deceased the day he returned home; at first he spoke rationally, but in a few minutes burst into tears, and appeared entirely deranged: saw him at intervals of four or five days or a week; at every interview he would, during some part of the conversation, appear bewildered; did not observe the state of deceased’s mind at the time he came before him as parish judge to acknowledge the mortgage; thinks it possible he might have had lucid intervals.
Ray deposed, that he saw the deceased two or three times after he came from the seashore; for a minute or two he would talk quite rationally, and then appear deranged.
The fact of M'Intire having boarded with the plaintiff, and that the latter was in the *258 daily habit of visiting him during the period, spoken of by the witnesses, was established.
The defendant also introduced the petition of the plaintiff, addressed to the parish judge, dated the 25th November, 1818, wherein it is stated, that M'Intire is subject to “an habitual state of mental derangement, and totally incompetent to the management of his affairs.”
On the part of the plaintiff, the following evidence was taken:—
Todd declared, that he did not see M'Intire for seven or eight days after his return from the sea-shore; that he could discover no marks of insanity in him, though it had been reported he was insane. Deceased appeared dejected, and in deep melancholy, which witness attributed to the deranged state of his affairs, and his bodily weakness. Thinks if an unjust claim had been presented, he would have discovered it. Witness was spoken to by plaintiff, if he knew of any manner in which his claim against M'Intire could be secured? he replied, he believed all his property, except some land in Concordia, was incumbered. Deceased showed great repugnance to execute the act of mortgage; consented to it finally through the solicitation of witness; ob *259 served no symptoms of his being deranged at the time he signed the instrument.
Irwin swore, that he purchased property from M'Intire after his return; appeared to witness perfectly in his right mind; believes he drank freely, but not so as to be intoxicated. Kirkby’s contract for the house was twelve or fifteen days after the deponent had bought property from the deceased; and witness told Kirkby, he did not then think deceased in a situation to make a bargain.
Doctor Dixon stated, that he attended deceased in his last illness, but did not know him particular until about twenty days before his death; found him sometimes quite rational, at others not so, but insane; thinks he was sometimes competent to do business, and at other times not; deceased was in the habit of drinking freely; witness attributed his insanity to his weak state of body, and the deranged state of his affairs; thinks drinking also contributed to it.
Wartel deposed, that when M‘Intire returned, he had a wild appearance; but that witness paid him a sum of money afterwards, believing him capable of doing business; paid the money without calling witnesses.
*260 Thomson said he saw deceased after he reached home from his trip to the sea shore, saw him frequently, was in the habit of visiting him as an acquaintance; he conversed rationally.
Simonds testified, that he lived in the same house with deceased during his last illness, saw him almost every day, never observed in him any marks of insanity, until he made the sale to Kirkby.
Bell called a second time, deposed, that the petition to have the deceased interdicted was abandoned. Why? he did not know.
Smoot swore, that he saw deceased after his return from the sea-shore, did not observe him to be insane, though worse than he went away.
On this proof, the district court gave judgment for the plaintiff, and we cannot say that it erred. The testimony, which is principally oral, is somewhat contradictory; and when it is so, the tribunal of the first instance, from the mode investigation is conducted before it, possesses so many advantages over this in the discovery of truth, that it is now settled, its decision, on a question of fact, will prevail in the supreme court, if not manifestly erroneous. Rachel vs. St. Amand, 8 Martin, 363. Brown vs. Louisiana Bank, ibid. 393. We apply this doc *261 trine, with entire readiness, to the case before us; for the evidence renders the fact of insanity doubtful, and the decision of the judge below, against the party holding the affirmative, was in perfect conformity with that principle, which requires him, who avers, not to raise doubts, but to establish facts.
Brownson for plaintiff Brent, Lessassier and King, for defendant.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.